*David W. Thayer*
*1301 KS HWY 264*
*Dillon Bldg DW-1*
*Larned, Kansas 67550-5353*
*(620) 285-4660 Ext 1*



# UNITED STATES DISTRICT COURT
## Title 42 USC 1983
*This is a complaint under the title 42 USC 1983*
*Seeking out damages, declaratory Judgement*
*And injunctive relief*

*David W. Thayer    March 18th, 2024*

*Cover Page*

*David W. Thayer*
*1301 KS 264 Hwy*
*Dillon W-1*
*Larned, Kansas 67550-5353*
*(620) 285-4660 Ext #1*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In the matter in care and treatment of: | ) | |
| David Wayne Thayer | ) | |
| **Plaintiff** | ) | |
| v. | ) | Case No:___24-3043-JWL___ |
| **Laura Howard**, Secretary of Kansas Department for Aging | ) | Pursuant to Title **42 USCA** |
| and Disability Services; | ) | **1983: "for state officals** |
| | | **who violates a person's** |
| | | **constitutional rights under** |
| | | **color of state law"** |
| **Linsey Dinkle**, Larned State Hospital Superintendent | ) | |
| | ) | |
| **Courtney Wagner** SPTP Program Manager | ) | |
| | ) | |
| **Haleigh Turner**, Chief of Operations | ) | |

**Christine Mohr** Psy LP for Larned State Hospital                )

**Alexandra Clark** Infectious Disease Control for Kansas          )

Department of Health and Environmental Services                   )

                                                                  )

**Chris Moore** , S.P.T.P. Due Process Coordinator                )

                                                                  )

**Jason Fisher**, Chief of Security for Larned State Hospital      )

                                                                  )

**Linda Kidd  Program Leader**                                    )

**Defendant(s).**                                                 )

_____

Case No. _____

**COMPLAINT**
**Pursuant to 42 USC 1983**

**INTRODUCTORY STATEMENT**

The action seeks declaratory judgment against the State of Kansas for actionable misconduct by each state employee, and damages against them in their official capacity as individual employees of the State of Kansas acting under color of law.

This action is for damages in the amount of **$7,150.00** in providing for the Native American call out in which the Larned State Hospital's Religious groups plus all related costs, fees and expenses sustained by Plaintiff against individual state employees (listed herein) at Larned State Hospital for the intentional, malicious and unauthorized deprivation of practice my Religion as well as punitive or exemplary damages in the amount of **$50,000.00**.

The action is against the Secretary of KDADS as the supervisory officer responsible for the conduct of the defendants and for the Secretary's failure to take **corrective action** with respect to the employees of Larned State Hospital to assure proper training and supervision of the personnel, or to implement meaningful procedures to discourage lawless official conduct.

By reason of his indigence and the volume of documentation involved Plaintiff is presented with the **"Hobson's choice"** between eschewing a potentially meritorious claim or foregoing life's plain necessities, **" An Illusory choice, where the only realistically possible cause of action trenches on an adherent's sincerely held religious belief"** (see Polk v Bunting 2024 U.S. Dist. LEXIS 15150 as of Jan 29th 2024 10th cir.) and Plaintiff can not afford to copy the documentation required for this courts preliminary consideration therefore, requests to be allow to incorporate the evidence by reference until such time as otherwise ordered by this court with

this complaint and by virtue of Defendant's own acts and omissions, Plaintiff has exhausted his administrative remedies available to him.

## PARTIES INVOLVED

1. Plaintiff, **David Thayer**, is a civilly committed person, pursuant to K.S.A. 59-29a01 et seq., and is currently confined at the Kansas Sexual Predator Treatment Program pursuant to an order from the Pawnee County District Court. By **Service of summons**, process by service, The Plaintiff's current address is: 1301 Kansas Highway 264, Larned Kansas 67550.

2. Defendant, **Laura Howard**, **Secretary of Kansas Department for Aging and Disability Services**, has physical custody of the Plaintiff and is responsible for his physical custody, care and treatment at the Kansas Sexual Predator Treatment Program. **By Service of summons**, process by service at: **503 S. Kansas Ave., Topeka, Kansas, 66603,**

3. Defendant, **Lindsey Dinkel**, **Superintendent** of Larned State Hospital (hereafter LSH), is responsible for overseeing the government and discipline of the LSH facility. **By Service of Summons**, process by service at 1301 KS Hwy 264, Larned, Kansas, 67550.

4. Defendant, **Dr. Christine Mohr** (Phy LP) is employed as the **Director of Psychology** for LSH and responsible for overseeing the government and discipline of clinical staff and reviewing complaints regarding the deprivation of resident's right. **By Service of Summons,** process by service at 1301 KS Hwy 264, Larned, Kansas, 67550.

4.  Defendant, **Gabriel Rop , Administrative Program Director** (hereafter Director or APD) of the Sexual Predator Treatment Program (SPTP) at LSH, is responsible for governing, promulgating and enforcing policies or procedures that define the operation and discipline of the SPTP and it's employees. **By Service of summons,** process by service at 1301 KS Hwy 264, Larned, Kansas, 67550.

5.  Defendant, **Jason Fisher**, LSH **Chief of Security**, is responsible for enforcing policies or procedures that define the operation and discipline of security personnel, including the SPTP property officers. **By Service of summons,** process by service 1301 KS Hwy 264, Larned, Kansas, 67550.

6.  Defendant, **Joni Bishop**, **SPTP Unit Leader**, is responsible for the conduct of unit staff under her authority on Dillon Building and of Isaac Ray South 3 . **By Service of summons**, process by service 1301 KS Hwy 264, Larned, Kansas, 67550.

7.  Defendant, **Tina Rose**, **SPTP Property Officer**, is jointly responsible for the management, control, and storage of property placed within her care. **By Service of summons**, process by service 1301 KS Hwy 264, Larned, Kansas, 67550.

8.  Defendant, **Courtney Wagner, Assistant Program Director**, is jointly responsible for the direct supervision of unit staff and residents under her care. **By Service of summons**, process by service 1301 KS Hwy 264, Larned, Kansas, 67550.

9.  Defendant **Haleigh Turner**: **Chief of Operations** for LSH **By Service of summons,** process by service at 1301 K264 Hwy, Larned, Kansas 67550.

10. Defendant **Jeff Brown Chaplin** for LSH and SPTP is jointly responsible for the violations of the Petitioner and his Constitutional rights pursuant to the first Amendment of the US Constitution and the RLUIPA and RFRA **By Service of summons,** process by service 1301 K264 Hwy, Larned, Kansas 67550.

11. Defendant **Linda Kidd**: **Program Leader** for SPTP **By Service of Summons,** process by service at 1301 K 264 Highway, Larned, Kansas 67550

12. **Tonya Taylor**: **Acting Program Director** for SPTP at 1301 K264 Highway Larned, Kansas 67550 since her leaving SPTP **she can now be reached at** 120 S.W. 10th Ave, 2nd floor, Topeka Kansas 66613 **By Service of summons,** process by service.

## <u>Nature of Action</u>

Pursuant **to KSA 75-6105**, an individual employee acting within the scope of the employee's employment can be held liable for punitive or exemplary damages or for interest prior to judgment due to actual fraud or actual malice. All of the above named defendants are directly responsible for ensuring that the Petitioner's statutory and constitutional rights are protected and as such are responsible for taking proper action(s) when such rights are violated or denied to petitioner. What belief's are protected pursuant to the **RLUIPA**, it states **"while neither statute defines religion, religious exercise includes any exercise of religion whether or not compelled by, or central to, a system of religious belief"** 42 USC section 2000cc-(5)(7)(A), and that definition now applies under RFRA too. **42 USC section 2000bb-2(4),** So states as well that **" This Act shall be construed a favor of broad protection of religious exercise to the maximum extent permitted by the terms of this act and the Constitution"** 42 USC 2000bb-2(4), **"It therefore seems reasonable to conclude that anything the courts have found to be protected by the Free Exercise Clause is also protected by RLUIPA and RFRA".** (1) Petitioner states that his **constitutional** and **statutory rights** to [ his religion] are being and have been **violated** and **denied** to him and his fellow Native residents under and contrary to **Kan. Stat. Ann. 59-29a22(b)(8)** and the **First Amendment of the United States Constitution** and **RLUIPA**. Petitioner further asserts that there has been a **repeated** and **continuing deliberate indifference** by each of the named defendants to religion and religious rights, beliefs and practices. (a) Petitioner further asserts the **(Defendant Laura Howard) refuses** to take **any actions against** SPTP officials, namely the defendants listed in this suit, even though defendant Laura Howard is responsible for ensuring my rights are not violated pursuant to **Kan. Stat. Ann. 59-29a22.** (b) **Kan. Stat. Ann. 59-29a22(b)(8)** states in pertinent part: **"Sexually violent predators; rights and rules of conduct; definitions... (b) Each person shall have the following statutory rights... (8) To individual religious worship within the facility if the person desires such an opportunity, as long as it complies with applicable laws and facility rules and**

policies..." (c) **LSH-SPTP Policy P9-06** list the religious rights and guidelines for persons in LSH/SPTP (see enclosed copy for record). Nowhere in this does it give LSH/SPTP employee's the authority to restrict or deny a person's religious freedoms and rights in whole or in part. (d) **Kan. Stat. Ann. 59-29a22** lists specific rights that can be restricted or denied for cause and states the procedures that must be followed when such rights are denied or restricted. Religion and religious freedoms is not one of those rights that can be denied or restricted per this statute. Therefore each Defendant have no legal authority to completely or even partially deny or restrict petitioner's right to pray according to his sincerely held beliefs as they have done and continue to do. (**See Kan. Stat. Ann. 59-29a22(c)(1)** " **a persons rights under this subsection (B)(15) to (B) (22) may be denied for cause by the superintendent of the facility or the superintendent's designee, or when medically or therapeutically contraindicated as documented by the person's physician , licensed psychologist or licensed master's level psychologist in the persons treatment record..."** Plaintiff hereby asks this court to take note of the fact that , per this state law, only the rights listed from (b)(15) to (b)(22) can be restricted or denied and that would conclude that an imply that (b)(8) is not included and cannot be denied or restricted. (e) **In March of 2020-2022** Defendants **Haleigh Turner**, **Leisa  Dipman**, and **Linda Kidd**, implemented an unpublished ":memo" that due to COVID-19 all call-out activities, including religious meals were suspended. These defendants **did not publically publish the first official "memo"** available to SPTP residents regarding this decision **until April 1st, 2020**. Since then,  each defendant  have posted multiple-memos easing the tightening of these restrictions. However, each time until late 2021, the right to pray according to my religious beliefs dictate through use of a pipe and tobacco was continually denied. The Defendants mentioned herein, have  made no effort to accommodate this religious tenet until after petitioner initially filed this complaint later in 2020 even though they were given multiple ways to safely to do so in the least restrictive means ((See copies of all posted memos regarding call-outs and COVID-19). (f) **On June 27th, 2020** Petitioner filed a grievance after being denied his request to be allowed to go out and

say prayer (**which would include Smudging and the use of the pipe and tobacco**) This would have been no different than each employee taking plaintiff to the same area where he was, being given his three fresh air breaks a day by himself. Since petitioner would have been by himself, he would therefore would have been "socially distant. However, defendants **Haleigh Turner and Jeff Brown denied his request.** When the plaintiff did request if he could "just smudge alone" again he was **denied** by **Chaplin Brown.** (g) **On may 25th, 2020,** several months after SPTP shut everything down because of the COVID-19 epidemic, the plaintiff submitted a request to treatment team asking for authorization to purchase a personal pipe so petitioner could make his prayers in accordance with his fundamental and sincerely held religious beliefs without risking spreading or catching COVID-19 and no one else would or could use such pipe. Defendant **Jeff Brown**, who is in charge with providing for and **protecting residents religious rights**, replied to this request over two months later on **July 29th, 2020** denying his accommodation request effectively continuing to completely deny petitioner his rights to pray according to the tenets of his faith. (h) **On May 26th, of 2020 after former President Trump announced that religion was considered "Essentials Business" petitioner again submitted a request to obtain a personal prayer pipe. Defendant Jeff Brown responded on July 29th, 2020 again denying his accommodation request**. The plaintiff believes in and practices the ways of the Native American beliefs. Plaintiff is an independent Native American in the call out here in SPTP(one of three such call outs) The **Independants** is inter tribal but mostly follows the Cherokee and Lakota ways. The use of the sacred pipe (**Chanupa**) and tobacco are a very fundamental and essential aspect of his religion and its belief system. It is believed by Plaintiff (and most natives generally) that it is the smoke from the sacred tobacco that carries his prayers and energies to Grandfather and his ancestors and this is how he is to pray. **On or about March 18th, 2020 Defendants Haleigh Turner posted a notice that due to the COVID pandemic all religious activities were canceled until further notice. Effectively canceling Religion.** Petitioner then again asked the defendants **Jeff Brown** and **Haleigh Turner** for authorization "during COVID

pandemic only" to be allowed to purchase a personal prayer pipe to be held and kept in **Chaplin Browns**

Office when not in use. These employee's , continued to deny these request again effectively denying

SPTP Native residents the right and ability to pray. These requests were persistently denied even though

this can be done safely and with social distancing. Meanwhile Smudging was allowed which requires

residents to be closer than they need to be to pray with the Chanupa (pipe) Thus for **over a year** each

employee did **refused** to allow plaintiff to pray. These denials still continue in spite of the efforts to

compromise while adhering to social distancing and safety precautions for COVID. The position of the

defendants was and has been, that they are "allowing liquid smudge" (a liquid from a spray bottle "sage

in a spray bottle" ) and that allowing this "fulfills" plaintiff's needs and tenets. (This is **not to satisfaction**

**to the mandatory needs of pro-presentation to the Grandfather nor is it enough to offer a prayer in**

**accordance with the sincerely held belief of how we are to submit ourselves during our true way**

**because this is the only way we can honor our forefathers, our Grandfather and also to include a**

**cleansing for our ancestors .** The Smudge is the way we can cleanse yourself of the negative energies

and spirits in-order to be able to properly present yourself and your prayers to the CREATOR, to be able

to enter the sacred lands and the like....But this in itself is not personal prayer or praying. (2.) In January

2021. Employee Turner and Dipman posted a memo update on call-out activity as things started to open

back up. IN FINE PRINT AT THE BOTTOM OF THIS MEMO WAS THIS FOLLOWING MESSAGE: "**daily**

**smudge will be allowed during/yard/fresh air breaks**" However over the next month until sometime in

July 2021 in spite of petitioner's many attempts to do so there was no daily smudge. Because Tonya

Taylor (Acting program director for SPTP) placed the responsibility on activity therapy staff who would

not and could not get the lighter from LSH security so we could smudge....**Petitioner did file multiple**

**grievances between January 2021 and July 2021 on this lack of smudge and each time petitioner**

**received responses such as "I am working on it" or "I believe that I have identified the problem" and**

**the favorite all time excuse "I have notified CTS staff" in which the petitioner knew he was being lead**

**around the block of "no ones responsibility here" and has created a "deliberate indifferent standard",**

**inspite of these responses there was no smudging between January 2021 thru to July of 2021.** a)

Between January 2021 and July 2021 petitioner met with defendant Taylor and defendant Brown about

this several times. And it still took defendants and SPTP officials **7 (seven) months after posting** notice

that daily smudge would resume before petitioner was actually allowed to smudge regularly. This shows

an **indifference to petitioners religious needs and rights, and is a failure to meet petitioners care and**

**treatment needs as all of the defendants listed are responsible for and obligated to provide for all of**

**petitioner's needs including his spiritual needs.** During the entire time March 2020, to July of 2021 the

defendants continued to also completely deny petitioner's ability to pray and his beliefs dictate he is to

pray—through the use of the pipe and tobacco ceremonies. b) Defendants had and continued to use

COVID-19 to simply cut out the rights to the practice of my religion, and to add the defendants would

cancel the religious call out for all those outside call-outs, whenever it was a convenience to them,

regardless of any proposed or even possible "Least Restrictive Measures" available. In Particular, in May

2020 Petitioner's Uncle who was Kickapoo passed away. Taking COVID in to consideration petitioner had

asked for 15 to20 minutes to be allowed to say prayer for his uncle, and two of his best and dearest

friends in helping their family to cross over and that they would not be alone, without any other peers

knowing that a proper passing ceremony could not be done . c) This accommodation would have

followed with the proper applications of following all federal guidelines that was citing "social

distancing" etc... as he would have been alone .Defendants already took petitioner during this time

period alone to the same court yard for three fresh air breaks a day for 15minutes at a time. Defendants

Haleigh Turner, unit leader Erica Brown, and Jeff Brown denied this simple accommodation request.

Instead Defendant Jeff Brown (the Chaplin) simply offered to come "pray with you" **when Defendant**

**Brown is not a Native and would not allow proper prayer with pipe and tobacco.** (d) Shovel to tend the

fire and carry/transport rock; (e) Fire pit and a fire to (heat the rock) (f) Nearby water hose. To put out

the fire as well as to douse ourselves afterward and to stay **cool in the hotter months of the year.**

Defendant Turner confiscated all of the tools listed above once COVID-19 shut things down claiming that all of the sudden these items were now a safety and security risk even though they never have been in **over two decades**. Not even once. Defendant Taylor now is telling petitioner and his like minded peers that "they may never be allowed again to have this cleansing ceremony and that if they are allowed to have the Sweats, then the black tarp is to be clear...This completely erodes the significance of the reason why such a lodge is dark. 3) Even after allowing residents, including petitioner, to purchase and use their own personal pipe once per week, defendants still take advantage of any reason to deny the use thereof. a) While this may be the first example it is none the less important in showing the overall indifference of petitioner's religious rights and beliefs.. 4) **On September 9th of 2021 the unit petitioner resides on (Dillon West One) now, then was living on Dillon East one was placed on quarantine, after one of the staff who has worked with this unit was tested for COVID and was found to have COVID, as a result Defendant Turner again shut down the religious call out for every one and the entire concept for smudging with no pipe was again denied to us this was on September 11th and 12th of 2021. When the petitioner and other members attempted to question Defendant Bennett she refused to speak with anyone about the possibility of having a make up day for what we had lost. a) There is no more or less separation between resident's for and during Smudge, than if the use of the pipe would have been allowed. The only differences would be that there would be , each member does+ own their own pipes.. Thus the denial of any accommodation by request of petitioner of just allotting 30 minutes (as Haleigh Turner had done under other circumstances) when staff as well as the Chaplin (Jeff Brown) were willing to come in and help, was done with complete and utter contempt of and indifference to petitioner's rights, beliefs, and spiritual well being.**

**CLAIM I;  STANDARDS FOR RELIGIOUS FREEDOM CLAIMS:   1) RFRA, RLUIPA, the first amendment and state law;  Under the 1st amendment's  Free Exercise Clause, as long as a restriction is reasonably related to a legitimate correctional purpose it must be upheld. O'Lone vs Estate of Shabazz, 42 U.S. 342, 349 , 107 S.Ct.2400 (1987) (quoating Turner vs. Safley, 482 U.S. 78, 89, 107S.Ct.2254 (1987) This is the same reasonableness standard that Governs other prison civil liberties claims. In 2000 Congress tried again. It passed the RLUIPA which reinstated the "compelling interest/least restrictive means" standard of RFRA for states and their agencies. Congress avoided the constitutional problem that RFRA had by basing RLUIPA on Congress's, power under the Spending Clause of the constitution rather than the 14th Amendment. That is, if State or Local Governments accept Federal Funding for their correctional programs they must satisfy the compelling interest/least restrictive means standard to justify placing substantial burdens on residents/inmates religious exercise. Under the RULIPA/RFRA standard---Often referred to as "strict scrutiny"---Is more favorable to prisoners than the Turner/O'lone reasonableness standard, and a number of cases have ruled against prisoners under Turner/O'lone, however in favor of them under RFRA/RULIPA. The advantages of the statutory standard include:**

## CLAIM II; A) *The persistent Violations of the Constitutional and Civil Rights;*

This action arises out of the clear violations of a constitutional and civil rights nature. The respondents have failed to conduct **adequate** and **necessary due diligence** with *respect* to The United States Constitution Amendments **14th of Due Process,** the **8th** towards **inadequate medical care** and to the **inadequate mental health treatment** and the **1st Amendment** for the rights **to practice their religion** in a free and daily practice, and pursuant to the **Kansas Bill of Rights Section 10 and to include section 7.** The respondents show a **lack** of **due diligence** concerning the Policies and Procedures of SPTP (to include LSH policies and procedures that are

incorporated within the Sexual Predator Treatment Program as a continued practice by SPTP)
and have (by SPTP) **violated** their own policies and procedures persistently since the *inception*
of the SPTP program in 1994. Mr. Thayer completed his maximum **criminal** sentence in the year
of **2005** and under the SVPA. He has been a resident within the Larned State Program since
completing his criminal sentence. He was civilly **committed on January 6th , 2003**. He is now
**54 years old** in **July of this year 2023.**

Mr. Thayer has been **invested** in the sexual predator treatment program since the days of his
inception upon his arrival in SVP. There was a period that Mr. Thayer did stop working the
program not because he wanted to, the real reason was because of the administration of the
Sexual Predator Treatment Program **refused** to move him forward in the program. He has
experienced approximately *35 therapist* within this program, since his arrival and none of them
encouraged nor did they respond to how Mr. Thayer is applying the program internally. He
stayed in another location known as the Issac Ray Building (criminal punishment of South1). Mr.
Thayer made the necessary decisions and adjustments and is **now in the main stream of the**
**program and applying interventions when needed,** and now reside on West 1 of Dillon
Building. All of the above named defendants are directly responsible for ensuring that the
Petitioner's statutory and constitutional, and Civil rights are protected and as such are responsible
for taking proper action(s) when such rights are violated or denied to petitioner.

Petitioner brings this action upon himself as well as all resident's in SPTP (Sexual Predator
Treatment Program) who believe in and practice the Native path who are members of the Grey
Wolf and Red Wolf Call outs that now include the Independents call out, here in SPTP as any
decision for or against petitioner will ultimately affect the residents as well.

(1) Petitioner states that his constitutional and statutory rights to practice his religion are being

And have been violated and denied to him and his fellow Native residents under and contrary to

Kan. Stat. Ann. 59-29a22(b)(8) and the First Amendment of the United States Constitution and

RLUIPA.

Petitioner further asserts that there has been a repeated and continuing deliberate indifference by

the named defendants to religion and religious rights, beliefs and practices.

(a) Petitioner further asserts the Secretary of KDADS (defendant Laura Howard) refuses to take

any actions against SPTP officials, namely the defendants listed in this suit, even though

defendant Laura Howard is responsible for ensuring our rights are not violated pursuant to Kan.

Stat. Ann. 59-29a22. (b) Kan. Stat. Ann. 59-29a22(b)(8) states in pertinent part: "Sexually

violent predators; rights and rules of conduct; definitions... (b) Each person shall have the

following statutory rights... (8) To individual religious worship within the facility if the person

desires such an opportunity, as long as it complies with applicable laws and facility rules and

policies..."(c) <u>LSH-SPTP Policy P9-06</u> list the religious rights and guidelines for persons in

LSH/SPTP (see enclosed copy for record). Nowhere in this does it give LSH/SPTP staff the

authority to restrict or deny a person's religious freedoms and rights in whole or in part.

(d) Kan. Stat. Ann. 59-29a22 lists specific rights that can be restricted or denied for cause and

states the procedures that must be followed when such rights are denied or restricted. Religion

and religious freedoms is not one of those rights that can be denied or restricted per this statute.

Therefore the Defendants have no legal authority to completely or even partially deny or restrict

petitioner's right to pray according to his sincerely held beliefs as they have done and continue to

do. (See Kan. Stat. Ann. 59-29a22(c)(1) " a persons rights under this subsection (B)(15) to (B)

(22) may be denied for cause by the superintendent of the facility or the superintendent's

assistance, or when medically or therapeutically contraindicated as documented by the person's physician , licensed psychologist or licensed master's level psychologist in the persons treatment record..." Petitioner hereby asks this court to take note of the fact that , per this state law, only the rights listed from (b)(15) to (b)(22) can be restricted or denied and that would conclude that an imply that (b)(8) is not included and cannot be denied or restricted.

(e) In March of 2020 Defendants Haleigh Turner, Leisa Dipman, implemented an unpublished ":memo" that due to COVID-19 all call-out activities, including religious meals were suspended. These defendants did not publicize publish the first official "memo" available to SPTP residents regarding this decision until April 1st, 2020. Since then these defendants have posted multiple memos easing the tightening of these restrictions. However, each time until late 2021, the right to pray according to my religious beliefs dictate through use of a pipe and tobacco was continually denied. Defendants made no effort to accommodate this religious tenet until after petitioner initially filed this complaint later in 2020 even though they were given multiple ways to safely to do so in the least restrictive means ((See copies of all posted memos regarding call-outs and COVID-19)).

(f) On June 27th, 2020 Petitioner filed a grievance after being denied his request to be allowed to go out and say prayer (which would include Smudging and the use of the pipe and tobacco) This would have been no different than staff taking petitioner to the same area where he was being given his three fresh air breaks a day by himself. Since petitioner would have been by himself, he would therefore would have been "socially distant. However, defendants Haleigh Turner and Jeff Brown denied his request.

When the petitioner did request if he could "just smudge alone" again he was denied by Chaplin

Brown.(g) On may 25th, 2020, several months after the security and safety (ran by Douglas

Lawson, SPTP shut everything down because of the COVID-19 epidemic, the petitioner

submitted a request to treatment team asking for authorization to purchase a personal pipe so

petitioner could make his prayers in accordance with his fundamental and sincerely held

religious beliefs without risking spreading or catching COVID-19 and no one else would or

could use such pipe. Defendant Jeff Brown, who is in charge with providing for and protecting

residents religious rights, replied to this request over two months later on July 29th, 2020 denying

his accommodation request effectively continuing to completely deny petitioner his rights to pray

according to the tenets of his faith.(h) On May 26th, of 2020 after former President Trump

announced that religion was considered "Essentials Business" petitioner again submitted a

request to obtain a personal prayer pipe. Defendant Jeff Brown responded on July 29th, 2020

again denying his accommodation request.Petitioner believes in and practices the ways of the

Native American beliefs. Petitioner is an independent call out here in SPTP(one of three such

call outs) Grey Wolf is inter tribal but mostly follows the Cherokee and Lakota ways. The use of

the sacred pipe (Chanupa) and tobacco are a very fundamental and essential aspect of his religion

and its belief system. It is believed by Petitioner (and most natives generally) that it is the smoke

from the sacred tobacco that carries his prayers and energies to Grandfather and his ancestors

and this is how he is to pray.

On or about March 18th, 2020 Defendants Haleigh Turner posted a notice that due to the COVID

pandemic all religious activities were canceled until further notice. Effectively canceling

Religion. Petitioner then again asked the defendants Jeff Brown and Haleigh Turner for

authorization "during COVID pandemic only" to be allowed to purchase a personal prayer pipe

to be held and kept in Chaplin Browns Office when not in use. These defendants continued to

deny these request again effectively denying SPTP Native residents the right and ability to pray.
These requests were persistently denied even though this can be done safely and with social
distancing. Meanwhile Smudging was allowed which requires residents to be closer than they
need to be to pray with the Chanupa (pipe)

Thus for over a year all defendants refused to allow petitioner to pray. These denials still
continue in spite of the efforts to compromise while adhering to social distancing and safety
precautions for

COVID.

The position of the defendants was and has been, that they are "allowing liquid smudge" (a
liquid from a spray bottle "sage in a spray bottle" ) and that allowing this "fulfills" petitioner's
needs and tenets. (This is not to satisfaction to the mandatory needs of pro-presentation to the
Grandfather nor is it enough to offer a prayer in accordance with the sincerely held belief of how
we are to submit ourselves during our true way because this is the only way we can honor our
forefathers, our Grandfather and also to include a cleansing for our ancestors . The Smudge is the
way we can cleanse yourself of the negative energies and spirits in-order to be able to properly
present yourself and your prayers to the

CREATOR, to be able to enter the sacred lands and the like....But this in itself is not personal
prayer or praying.

(2.) In January 2021 Defendants Bennett and Dipman posted a memo update on call-out activity
As things started to open back up. IN FINE PRINT AT THE BOTTOM OF THIS MEMO WAS
THIS FOLLOWING MESSAGE: "daily smudge will be allowed during/yard/fresh air breaks"
However …over the next month until sometime in July 2021 in spite of petitioner's many
attempts to do so there was no daily smudge. Because Tonya Taylor placed the responsibility on

activity therapy staff who would not and could not get the lighter from LSH security so we could smudge....Petitioner did file multiple grievances between January 2021 and July 2021 on this lack of smudge and each time petitioner received responses such as "I am working on it" or "I believe that I have identified the problem" and the favorite all time excuse "I have notified CTS staff" in which the petitioner knew he was being lead around the block of "no ones responsibility here" and has created a "deliberate indifferent standard", inspite of these responses there was no smudging between January 2021 thru to July of 2021.

a) Between January 2021 and July 2021 petitioner met with defendant Taylor and defendant Brown about this several times. And it still took defendants and SPTP officials 7 (seven) months after posting notice that daily smudge would resume before petitioner was actually allowed to smudge regularly. This shows an indifference to petitioners religious needs and rights, and is a failure to meet petitioners care and treatment needs as all of the defendants listed are responsible for and obligated to provide for all of petitioner's needs including his spiritual needs. During the entire time March 20pipe was again denied to us this was on September 11th and 12th of 2021. When the petitioner and other members attempted to question Defendant Bennett she refused to speak with anyone about the possibility of having a make up day for what we had lost.

a) There is no more or less separation between resident's for and during Smudge, than if the use of the pipe would have been allowed. The only differences would be that there would be , each member does own their own pipes.. Thus the denial of any accommodation by request of petitioner of just allotting 30 minutes (as Haleigh Turner had done under other circumstances) when staff as well as the Chaplin (Jeff Brown) were willing to come in and help, was done with complete and utter contempt of and indifference to petitioner's rights, beliefs, and spiritual well being.

5) Defendants Jack Brown, Haleigh Turner, and Leisa Dipman simply cite that SPTP policy allows call-outs to be canceled for a plethora of reasons to include safety, security and operational needs of the facility. However...All of the Defendants have continued to refuse to explain how any accommodation request by petitioner and his peers over the last 18 months would be or actually pose a threat to the safety, security, and operational needs of the facility.

a) Each of the defendants refuse to even consider the **Less Restrictive Measures** when conflicts do arise, instead the only action taken against the call outs is to always cancel them for their convenience Example: On August 28th and 29th of 2021 Defendant Bennett canceled call-out activities in favor of conducting visits because there were not enough staff that weekend to do both. Petitioner asked defendant Bennett to schedule a day later that week to make up for the missed day of prayer and worship. Defendant Bennett's definitive answer was "NO". We do ask these courts why not? And the answer is plain: SPTP officials relish any excuse or reason no matter how trivial to cancel religious worship and acts. The SPTP policy even eludes to the fact **that religion can be canceled for any reason by any number of people.**

**Therefore**, Petitioner prays that this court finds the defendants actions do in fact violate petitioner's religious freedom and rights guaranteed to him by the United States Constitution and the Kansas Bill of Rights Section 10 , mandated right to practice petitioners freedom to worship and prayand that his peer's are affected as well and are asking these honorable courts to hold the defendants responsible for their action's as acting under the color of State Law, a showing of prejudicial indifference concerning the right to practice in and worship of prayer. The Statutory rights of petitioner and his peer' rights pursuant to **KSA 59-29a22(b)(8)** and the **1st and 14th Amendment of the United State Constitution The rights to worship and pray and under the 14th Amendment The right to Due Process when a conflict has arisen.**

**Such actions may be acceptable in prison and a penal setting, but the indifference to these rights are not and can not be found to be acceptable in a civil commitment setting for which the Petitioner and his Peer's that are civilly confined see (Hendricks, Crane,Woe, and Bell v wolfish)**

**Therefore** , petitioner also prays that in so finding that this court to order the following relief and order that any further violations based on this courts decision in this case **shall result in a finding,** of being in contempt of court and warning that the court can and will impose all remedies against any defendant found to violate this court lawful order. The Petitioner asks of this because the defendants have far too long continue to violate all parties, protected right to the freedom of practice our religion and to worship and prayer. Petitioner therefore prays that this court grants the following relief:

1) **To order an injunction from the defendants capability of canceling religious call outs**
2) **i'e: Pipe and drum ceremony etc "just because they can" per their policies is not a sufficient answer to support canceling any call outs.**

**2) To order the defendants to pay through their representative agency the following:**

**a) 75,000.00 for punitive damages and:**

**b) 75,000.00 in compensatory damages**


*I) Inadequacy of mental health therapy and Adequate Medical Car*

Mr. Thayer has gone to every sign up for classes during enrollment. He does have a therapist Raleigh Perez, This is his group therapist. During groups discussion, the discussion does grow away from the topic at hand to something that is used to "derail" the group effort of discovery, and maintaining its therapeutic understandings. However, it is noted that when a resident begins

the program once again, there has been so many changes that all of the residents including some

of the "Agencies" that are hired here, do not understand the dynamic means to this program, nor

what it is they are to "surrender" or reveal.

*Statement of Material Facts 1*

*1) The treatment program at the Earned State Hospital SPTP*

*a)* The SVPA provides for the civil commitment for "***Sexually Violent Predators***" who poses a

danger to the society or others should they be returned to society. The act for the State of

Kansas, defines "sexually violent predators" as:"**[A] person who has committed, many**

**sexually violent acts or who has a propensity for committing violent sexual acts".**

**(see: Black's Law Dictionary fifth pocket edition by Bryan A. Garner Editor in Chief**

**(page 716 under sexual predator))**

**Under** the **KSA statutes for the SVPA**, the Kansas Courts may order the civil commitment of a

person upon a finding after a hearing that the person "needs", continued involuntary civil

commitment as a sexually violent predator. Treatment for Mr. Thayer, at the Larned Facility, is

provided by the division of the Sunflower Services ….Treatment is provided directly by the

therapist . The Larned Facility is subjected to rules and policy procedures. This is offered

through the Sexual Predator Treatment Program's Resident Handbook refurbished October 8th,

2021. This handbook lists the required "Treatment Tiers" that have, literally, an **indefinite**

**period of time to complete each tier.** Mr.Thayer **includes** (the sexual Offender **after** doing our

**full sentence** in the state Prison *may be eligible*

to be ***indefinitely incarcerated*** at the Larned State Hospital, for the "mission" of the SPTP to

promote safety for the community as well as to ensure the welfare of the program residents in a

manner that fosters reintegration into a safe and stable environment)....

"***Treatment Tiers***"; (all new residents admitted to the program will be placed into the treatment

**tier Zero**----Assessment and Orientation which an extensive evaluation and assessment will take

place to determine the resident's risk and individualized treatment needs). [*Here*], the Plaintiff

states that this program has never been an "*individualized program* for each

resident, because this program focus their energies upon the "**punitive process**" against each

resident and persistently holds each resident responsible for other residents behavior, actions and

attitudes. The Chief of Operations Officer (Haleigh Turner) has continued the punitive ways and

means to assert authority over and making it impossible for the resident to think for them selves,

instead of focusing their energies upon something or some one that he has no control over, he

should be allowed to think for his own, and to hold himself (only) for his actions, attitudes, and

states of being]. Plaintiff here assert that this program does not focus on the individuality of a

person, yet the Defendants have taken upon themselves to combine all individuals like "pigs in a

blanket" showing that no one person could be responsible for their own actions and behaviors,

and this institution believes in a "one size fits all" concept...The Larned State Hospital is immune

pursuant to the 11th amendment of the United States Constitution, however, the Branch that is so

named and known as the Kansas Sexual Predator Treatment Program is not immune. The

employee's are employed by the Sunflower Agencies, In which they are not immune from a suit.

***Traumatic Effects of Involuntary Commitment.***

**A) Treatment Tier One; Skill Acquisition**

Residents on tier one will be assigned to therapy groups based on initial and ongoing

assessments of resident's needs and risks. **Tier one** Focuses on development of a relapse

,prevention plan. In addition, residents may be assigned to additional Cognitive Behavioral

Therapy groups, groups based upon Dialectical Behavioral Techniques, and evidenced based

"manualized" Therapy Groups based upon their individualized treatment plans. Psycho-Educational courses will also be offered and may consist as a lecture, audio/video presentations, resident\presentation, role-playing, and /or homework designed to complement group sessions.

**B) Treatment tier ---two---Basic application and acceptance of behavior**

Residents advance to tier two through the approval by the progress review Panel and on the request of the therapist for the readiness of the resident. Residents continue their treatment while also establishing employment while they are on tier two and learning how to continue the applications,finical stability and approved support network.

**C) Transitional and Conditional release;**

**1) Transitional Release:** Residents petition the courts for Transitional Release and are approved through a court order. While, on Transitional Release , residents continue "individualized therapy" and reside at one of the reintegration facilities. Currently housed on the grounds of Larned State Hospital, Osawatomie State Hospital and Parson's State Hospital, while they look for long term Housing and complete an approved Conditional Release Treatment plan. **2) Conditional Release**; Residents petition the courts for conditional release and are approved for conditional release by a court order. The plaintiff assert here that, the Phases are no longer used in this program, they now are still rewriting this program, (and now we use the "Tier" system, which is not working any better than the phases. At some length, this program has provided the "basics' of understanding how this program is based upon sexual offending, and not being based upon being abused.)

**a) Religious Freedom to Practice**

The Plaintiffs now assert that their first amendment right to the freedom of religion practice has been violated by the Defendants... The inherent difficulty in applying the first amendment

right is to show how The Defendants cancel whenever they choose, thus the program **is not providing** the _requirement_ to interpose **_no unreasonable barriers to the free exercise of a resident's religion, cannot be equated with the suggestion that this program does not have "enough staffing" to satisfy worship services._**

*For many years, since the inception of this program (1994) (Sexual Predator Treatment Program) had only one call-out for the Native American. Now to date there are three call outs concerning the Native American. We have The Red Wolf Native American, The Gray Wolf Native American and last we have an Independent Native American. In the Red wolf And the Gray Wolf there are about 20 members in each, and the Independent call out, is new, and they are hopeful that the numbers will grow. In 2004, the first Sweat Lodge was erected and used appropriately. The Native Americans did receive help, guidance, and encouragement from the Wichita Indian Care Center out of Wichita Kansas, the sponsors name at that time was Gale. The Sweat ceremonies were held once a month from 06:30am to 17:00pm. At a later point these times changed to 08:00am-14:00pm. On many occasions, these sweat ceremonies were cut short or even canceled due to the "staff shortage", this became a regular thing...more so when the staff had received their "pay day" weekend, or others would call in and having an excuse as to why they were not showing up for work. (the weekends are down to only two staf per unit, making it unlikely that the native Americans were being denied their smudge ceremonies, all the way towards not allowing them to worship at all for that week end, and there was never a date reassigned to help us make up that worship period. Today, it is now widely expected when the "lack of staff" or the "rational" for the cancellation, being used as "legal grounds" or to "deny" and "restrict" the ways of the Native American to practice or to worship (as a family).*

*From at least 2004 until COVID shut things down, the Native American used to be able to smudge on a daily basis except for those days that they had pipe and drum ceremonies and/or we had holiday meals. Once COVID Hit, they were denied ALL SWEAT Ceremonies even though not once did any participants misuse the tools or Sweat Lodge in at least 18 years they had monthly Sweats and once COVID came through the SPTP Administration (Haleigh Turner, Linda Kidd Keri Applequist, Chaplin Jeff Brown, and Jason Fisher (head chief of security for Dillon Building for the Sexual Predator Treatment Program) and these involved did decide to state that these tools were now a safety and security issue, just another way for the administration and security to exert their power taking away these tools that were designed for worship and it was VERY THERAPUTIC for each of the participants in this ceremony. Now, the Administration is telling all of us, that if they were to allow us to sweat ever again, that they are wanting a clear tarp over the lodge instead of the solid black one we have now. Allow us to share with you the meaning of why we need a black tarp and not a clear one. As the history of*

*the American Indian came about, white man did everything to disrupt, annihilate, rape and pilfer the land of indians, their families, and it is said that our United States Government did not concern themselves with this type of behavior This was back in the early 1700's. The meaning of the tarp being black, is once this sweat lodge is erected, it represents the womb of the mother of life. When one enters, he finds a place to sit, so that he may begin to offer himself and his prayers to Grandfather and other entities (ancestors of that family) The more that is sweat, the more the negative entities flee from lodge, then the journey's begin. As the continued experience (different with everyone) moves within the womb, the realization is the separation from the distractions of* Other residents were told by **Haleigh Turner** that they

would **never use the excuse** that there is "**not enough staff to hold services for you**", yet... that next weekend, Mrs. Haleigh Turner (our **Acting Administrative Program Director for SPTP At the Larned State Hospital**) used those exact words, "**there is not enough staff to provide services for you at this time**". Mrs. Haleigh Turner acting under the color of state and federal laws have denied purposely, the plaintiffs their constitutional right, and afforded protections by this right, to practice our religious beliefs. The *causation requirement* of subsection 1983, is satisfied only if the plaintiffs demonstrate that a Defendant, did an affirmative act, participated in another affirmative act, or omitted to perform an act, which she **was legally required** to do that **caused the deprivation** complained thereof. Upon closer examination of plaintiffs assertive rights, it will be noticed that there was a **denial** of Due Process because the Acting Administrative Program Director Haleigh Turner, Linda Kidd: Scheduler for the religious call outs, (stating that it was "easier" to cancel a callout than it was to continue one at certain times") Chaplin Jeff Brown (for LSH and SPTP all of Dillon, Myers, and Jung buildings) stated to several staff and residents that he "did not want to have a confrontation with staff", this is why he was not defending the religious rights and practices of the call-outs. Jason Fisher, and Liesa Dipman **failed to follow** the **policies** and **procedures,** allowing the *right to practice* the plaintiffs religious beliefs pursuant to the First Amendment of the Constitution, under the Substantive due process that applies to the violations of fundamental rights, i.e., a right created by the constitution itself, or protected interests to determine whether a governmental official acted arbitrarily and capriciously, regardless of the procedures used to facilitate that deprivation. Persons whom have been involuntarily committed are **entitled** to *more considerate treatment and conditions of confinement* than criminals whose conditions of confinement are designed to punish. It has come to the intention that pursuant to the third circuit and other circuits around

included, have stated that they consistently adopted the *"Turner" test to analyze the first amendment claims brought* on by civilly committed persons. Ruling that plaintiffs classification as a sexually violent predator under Kansas SVPA renders their status similar to that of a prisoner, and thus the first amendment claim may be analyzed by looking to case law interpreting a "prisoner's rights". Using the *Turner* to support the proposition that "[a]s is the case with prisoner's civilly committed person's certainly retain those 1st Amendment rights not inherently inconsistent with the circumstances of their detention". Collecting cases and concluding that it would apply the ***Turner test for assessing a civilly committed person's challenge*** to the institutional policy on First Amendment grounds.

The *Turner* test, mirrors the test for evaluating a civilly committed person's "due process claims" and because both tests involve "balanc[ing]" the constitutional interests of confined person's against the legitimate interests of the State run institution in which the plaintiffs reside. When, in addressing the issue whether plaintiffs have a first amendment right to practice their religious belief, within the Larned Program of SPTP, should be considered a violation of the First Amendment Right to practice their religion and personal beliefs, should be considered a violation by the Defendant's, thus the court should apply the *Turner* Factors. Through this statement, the plaintiffs herein are revealing two factors that makes this 1983 viable. (1) Whether the person engaged **in** the conduct complained of, was acting under the color of state law; and (2) Whether the alleged conduct ***deprived*** a person of rights, privileges or immunities guaranteed under the Constitution or laws of these United States.

### *Statement of Material Facts:*

Under the Act, Conditions of Confinement are to meet the Constitution and are to be

constitutional pursuant to **<u>KSA 59-29a09</u>** "The involuntary detention or commitment of persons under this act **<u>SHALL CONFORM</u>** to ***<u>Constitutional Requirements for Care and Treatment.</u>***" The above named Defendants are directly **responsible** for ensuring that the Plaintiff's statutory and constitutional rights are protected and as such are also responsible for taking proper action(s) when such rights are violated or denied to the Petitioner's

The Plaintiff's bring this action on behalf of and for themselves. The Plaintiff's do believe in the practice of the Native American path even though there are independents to this faith and practice here in SPTP (Sexual Predator Treatment Program) and as any decision for or against the Petitioners it will also most assuredly will affect these residents of the SPTP program as well.

1) Petitioner's state that their Constitutional and statutory rights to practice their religion is being violated and denied (by the Defendant's) pursuant to KSA 59-29a22(b)(8) and the First Amendment to the Constitution of these United States and the RLUPIA. The Plaintiff's further asserts that there has been a repeated and continued Deliberate Indifference Standard, by the above named individuals whom are (**Haleigh Turner, Lesia Dipman, Jason Fisher, and Chaplin Jeff Brown**) a) Pursuant to KSA 59-29a22(b)(8) states in part; "Sexually Violent Predators; Rights and rules of Conduct; definitions.....(b) Each person shall have the following statutory rights...(8) to individual religious worship within the facility if the person desires such an opportunity ,**as long as it complies with applicable laws and** facility rule and policy.

b) <u>LSH-SPTP Policy P9-06;</u> so lists religious rights and guarantee for persons in LSH/SPTP (see enclosed copy for record). Nowhere in this does it give LSH/SPTP staff the authority to restrict or deny a person's religious freedoms and its rights in whole or in part .

c) <u>KSA 59-29a22;</u> lists specific right that can be restricted or denied for cause shown and states the procedures that must be followed when such rights are denied or restricted. Religion and

religious freedoms is not one of those rights that can be denied or restricted per this statute. Therefore the Defendant's have no legal authority to completely or even partially deny or restrict Petitioner's right to pray according to his sincerely held beliefs as they have done and continued to do so. (see: KSA 59-29a22(c)(1) "A person's right under subsection (b) (15) to (b) (22) may be denied for cause by the superintendent of the facility or the superintendent's designee, or when medically or therapeutically contraindicated as documented by the person's physician, licensed psychologist or licensed master's level psychologist in the person's treatment record." The Plaintiff's hereby asks this court to take note of the fact that, per this state law, only the rights listed from (b)(15) to (b) (22) can be restricted or denied and that would conclude that and imply that (b)(8) is not included and cannot be restricted or denied.

Proposed by Ave Marie Law Review 443* by Benjamin J. Bogos of the Ave Marie School of Law,

**Note: ON THE LEGAL STANDARD FOR EVALUATING FREE EXCERCISE CLAIMS IN THE COUNTEXT OF SEX OFFENDER CIVIL COMMITMENT.:**

"While analogous to other context for which the free exercise legal frame work is well established, the context of SVP civil commitment is unique, and none of the existing legal standards clearly apply....The first Amendment of the United States Constitution provides that "Congress SHALL make no law respecting the establishment of religion, or prohibiting the free exercise thereof"..., The latter of these two proscriptions, the Free Exercise Clause, means primarily that an individual has the " right to believe and profess whatever religion doctrine one desires". Nevertheless, the exercise of religion often includes the performance of physical acts; and actions;, unlike purely spiritual beliefs, are properly within the scope of governmental regulation. But the context of sex offender civil commitment is unique. Committed sex offenders are confined in a restrictive environment similar to a prison. However, whereas the involuntary

commitment of prisoner's IS A FORM of criminal punishment, the commitment of SVP's in nonpunitive in nature, and is justified soley on civil grounds.Further, the established constitutional analysis for the evaluation for the evaluation of free exercise claims in the context of prison presupposes the existence of a penological government interestin the restriction of religious conduct. **No such interest or rational is present in the context of civilconfinement**. Interference is present where the governmental action compels the claimants to act in such a way that would violate his sincerely religious beliefs...while prisoners rights are diminished by the exigencies of the prison setting, "the prison walls do not form a barrier separating prison inmates from the protection of the constitution", and prisoner's retain certain fundamental constitutional guarantees, including the right to free exercise of religion.......The Turner Court listed several relevant factors in determining the reasonableness of a prison regulation. The first factor is whether there is a "valid, rational connection between the prison regulation and the legitimate interest put forward to justify it"....The Second Factor is "whether there are alternative means of exercising the right to remain open to prison inmates, and the Third Factor is whether allowing an accommodation of the asserted right would have an adverse impact "on guards and other inmates, and on the allocation of prison resources generally"....Under the Religious Land Use and Institutional Persons Act (RFRA) whenever state actions result in a substantial burden on the free exercise of religion , The state **must show** that its action is in furtherance of a compelling interest **and that it USED the LEAST RESTRICTIVE means of furthering that interest...** Under the religious Land use and Institutionalized person's act, The Government is prohibited from imposing a substantial burden on the religious exercise of institutionalized persons unless it demonstrates that imposition of the burden is in furtherance of a compelling state interest, and it is the least restrictive means of furthering that interest. Under RLUIPA a "religious exercise"

need not be "compelled by or central to, a system of religious belief"; a religious exercise is **any exercise of ones religious belief...**

In **Karsjens v Jesson, in which the district court found the civil commitment system _unconstitutional_,** alleged that the executive director of the State sex offender program implemented policies of a maximum security prison facility. These policies included "restricted visitation, **restricted property rights,** censored mail, **monitored calls (Department of Corrections for Larned have persistently "interrupted" personal calls and cut the phones off or threatened to "write us up" if we did not follow the policies of KDOC), restricted personal physical movement, unreasonable searches, Restrictive Religious Practice** and **Discipline without Due Process of Law". [Here]** the plaintiffs assert that what is in bold in the above case, is what they have **suffered from** since the inception of their Assistant Program Director has taken office (Mrs. HaleighTurner) who _was_ the facilities "Program Manager" For the Sexual Predator Treatment Program in the beginning. To continue, together the plaintiffs claim that these practices went "beyond the scope what was needed/necessary for treating Plaintiff's and Class members in a "therapeutic" manner.

Instead, through the "MHDD's" (Mental Health Developmental Disabilities Technician) They have suffered a great deal. The State of Kansas was doing a complete overhaul of its sexual offender civil commitment regime in the wake of an investigation that found its prior program had been both ineffective and poorly managed, with not a single "committee" reentering the broader community. (all committee's that were successful in transitional release, only found themselves being rolled back to the institutional program because of infractions of the rules made to allegedly help and guide these individuals as they found their way through the communities, and society.Petitioner incorporates by reference and re-alleges each of the preceding paragraphs

in this Complaint and every allegation contained above, as though fully set forth herein.

## CLAIM II: MALICIOUS & FRAUDULENT DEPRIVATION OF PRATCING RELIGIOUS ACTIVTIES

5) Defendants Jeff Brown, Haleigh Turner, and Leisa Dipman and Linda Kidd simply cite that SPTP policy allows call-outs to be canceled for a plethora of reasons to include safety, security and operational needs of the facility. However...All of the Defendants have continued to refuse to explain how any accommodation request by petitioner and his peers over the last 18months would be or actually pose a threat to the safety, security, and operational needs of the facility. a) Each of the defendants refuse to even consider the **Less Restrictive Measures** when conflicts do arise, instead the only action taken against the call outs is to always cancel them for their convenience Example: On August 28th and 29th of 2021 Defendant Turner  canceled call-out activities in favor of conducting visits because there were not enough staff that weekend to do both. Petitioner asked defendant Turner to schedule a day later that week to make up for the missed day of prayer and worship. Defendant Turner's definitive answer was "NO". We do ask these courts why not? And the answer is plain: SPTP officials relish any excuse or reason no matter how trivial to cancel religious worship and acts. The SPTP policy even eludes to the fact **that religion can be canceled for any reason by any number of people.**  All of the above named defendants are directly responsible for ensuring that the ***Petitioner's statutory and constitutional rights are protected and as such are responsible for taking proper action(s) when such rights are violated or denied to petitioner.***


Petitioner brings this action upon himself as well as all resident's in SPTP (Sexual Predator Treatment Program) who believe in and practice the Native path who are members of the Grey Wolf and Red Wolf Call outs that now include the independents, here in SPTP as any decision for or against petitioner will ultimately affect the residents as well.


(1) Petitioner states that his constitutional and statutory rights to practice his religion are being and have been violated and denied to him and his fellow Native residents under and contrary to Kan. Stat. Ann. 59-29a22(b)(8) and the First Amendment of the United States Constitution and RLUIPA. Petitioner further asserts that there has been a repeated and continuing deliberate indifference by the named defendants to religion and religious rights, beliefs and practices.

(a) Petitioner further asserts the Secretary of KDADS (defendant Laura Howard) refuses to take any actions against SPTP officials, namely the defendants listed in this suit, even though defendant Laura Howard is responsible for ensuring our rights are not violated pursuant to Kan. Stat. Ann. 59-29a22.

To individual religious worship within the facility if the person desires such an opportunity, as long as it complies with applicable laws and facility rules and policies..."

(c) <u>LSH-SPTP Policy P9-06</u> list the religious rights and guidelinenes for persons in LSH/SPTP (see enclosed copy for record). Nowhere in this does it give LSH/SPTP staff the authority to restrict or deny a person's religious freedoms and rights in whole or in part.

(d) Kan. Stat. Ann. 59-29a22 lists specific rights that can be restricted or denied for cause and states the procedures that must be followed when such rights are denied or restricted. Religion and religious freedoms is not one of those rights that can be denied or restricted per this statute. Therefore the Defendants have no legal authority to completely or even partially deny or restrict petitioner's right

to pray according to his sincerely held beliefs as they have done and continue to do. (See Kan. Stat. Ann. 59-29a22(c)(1) " a persons rights under this subsection (B)(15) to (B) (22) may be denied for cause by the superintendent of the facility or the superintendent'complaint later in 2020 even though they were given multiple ways to safely to do so in the least restrictive means ((See copies of all posted memos regarding call-outs and COVID-19).

(f) On June 27th, 2020 Petitioner filed a grievance after being denied his request to be allowed to go out and say prayer (which would include Smudging and the use of the pipe and tobacco) This would have been no different than staff taking petitioner to the same area where he was being given his three fresh air breaks a day by himself. Since petitioner would have been by himself, he would therefore would have been "socially distant. However, defendants Haleigh Turner and Jeff Brown denied his request.

When the petitioner did request if he could "just smudge alone" again he was denied by Chaplin Brown.

(g) On may 25th, 2020, several months after SPTP shut everything down because of the COVID-19 epidemic, the petitioner submitted a request to treatment team asking for authorization to purchase a personal pipe so petitioner could make his prayers in accordance with his fundamental and sincerely held religious beliefs without risking spreading or catching COVID-19 and no one else would or could use such pipe. Defendant Jeff Brown, who is in charge with providing for and protecting residents religious rights, replied to this request over two months

later on July 29th, 2020 denying his accommodation request effectively continuing to completely deny petitioner his rights to pray according to the tenets of his faith.

(h) On May 26th, of 2020 after former President Trump announced that religion was considered "Essentials Business" petitioner again submitted a request to obtain a personal prayer pipe. Defendant Jeff Brown responded on July 29th, 2020 again denying his accommodation request.

" Petitioner believes in and practices the ways of the Native American beliefs. Petitioner is an independent call out here in SPTP(one of three such call outs) Grey Wolf is inter tribal but mostly follows the Cherokee and Lakota ways. The use of the sacred pipe (Chanupa) and tobacco are a very fundamental and essential aspect of his religion and its belief system. It is believed by Petitioner (and most natives generally) that it is the smoke from the sacred tobacco that carries his prayers and energies to Grandfather and his ancestors and this is how he is to pray.".

On or about March 18th, 2020 Defendants Haleigh Turner posted a notice that due to the COVID pandemic all religious activities were canceled until further notice. Effectively canceling Religion.

Petitioner then again asked the defendants Jeff Brown and Haleigh Turner for authorization "during COVID pandemic only" to be allowed to purchase a personal prayer pipe to be held and kept in Chaplin Browns Office when not in use. These defendants continued to deny these request again effectively denying SPTP Native residents the right and ability to pray. These requests were persistently denied even though this can be done safely and with social distancing. Meanwhile Smudging was allowed which requires residents to be closer than they need to be to pray with the Chanupa (pipe)

Thus for over a year all defendants refused to allow petitioner to pray. These denials still continue in spite of the efforts to compromise while adhering to social distancing and safety precautions for COVID.

The position of the defendants was and has been, that they are "allowing liquid smudge" (a liquid from a spray bottle "sage in a spray bottle" ) and that allowing this "fulfills" petitioner's needs and tenets. (This is not to satisfaction to the mandatory needs of pro-presentation to the Grandfather nor is it enough to offer a prayer in accordance with the sincerely held belief of how we are to submit ourselves during our true way because this is the only way we can honor our forefathers, our Grandfather and also to include a cleansing for our ancestors . The Smudge is the way we can cleanse yourself of the negative energies and spirits in-order to be able to properly present yourself and your prayers to the CREATOR, to be able to enter the sacred lands and the like....But this in itself is not personal prayer

or praying.


(2.) In January 2021 Defendants Bennett and Dipman posted a memo update on call-out activity as

things started to open back up. IN FINE PRINT AT THE BOTTOM OF THIS MEMO WAS THIS FOLLOWING MESSAGE: "daily smudge will be allowed during/yard/fresh air breaks" However over the next month until sometime in July 2021 in spite of petitioner's many attempts to do so there was no daily smudge. Because Tonya Taylor Our then Program Director for SPTP placed the responsibility on activity therapy staff who would not and could not get the lighter from LSH security so we could smudge....Petitioner did file multiple grievances between January 2021 and July 2021 on this lack of smudge and each time petitioner received responses such as "I am working on it" or "I believe that I have identified the problem" and the favorite all time excuse "I have notified CTS staff" in which the petitioner knew he was being lead around the block of "no ones responsibility here" and has created a "deliberate indifferent standard", inspite of these responses there was no smudging between January 2021 thru to July of 2021.


a) Between January 2021 and July 2021 petitioner met with defendant Taylor and defendant Brown about this several times. And it still took defendants and SPTP officials 7 (seven) months after posting notice that daily smudge would resume before petitioner was actually allowed to smudge regularly. This shows an indifference to petitioners religious needs and rights, and is a failure to meet petitioners care and treatment needs as all of the defendants listed are responsible for and obligated to provide for all of petitioner's needs including his spiritual needs. During the entire time March 2020, to July of 2021 the defendants continued to also completely deny petitioner's ability to pray and his beliefs dictate he is to pray—through the use of the pipe and tobacco ceremonies.

b) Defendants had and continued to use COVID-19 to simply cut out the rights to the practice of my religion, and to add the defendants would cancel the religious call out for all those outside call-outs, whenever it was a convenience to them, regardless of any proposed or even possible "Least Restrictive Measures" available. In Particular, in May 2020 Petitioner's Uncle who was Kickapoo passed away. Taking COVID in to consideration petitioner had asked for 15 to20 minutes to be allowed to say prayer for his uncle, and two of his best and dearest friends in helping their family to cross over and that they would not be alone, without any other peers knowing that a proper passing ceremony could not be done .

c) This accommodation would have followed with the proper applications of following all federal guidelines that was citing "social distancing" etc... as he would have been alone .Defendants already took petitioner during this time period alone to the same court yard for three fresh air breaks a day for 15minutes at a time. Defendants Haleigh Turner, unit leader Erica Brown, and Jeff

Brown denied this simple accommodation request. Instead Defendant Jeff Brown (the Chaplin) simply offered to come "pray with you" when Defendant Brown is not a Native and would not allow proper prayer with pipe and tobacco

Pg 7

(d) Shovel to tend the fire and carry/transport rock;

(e) Fire pit and a fire to (heat the rock)

(f) Nearby water hose. To put out the fire as well as to douse ourselves afterward and to stay

cool in the hotter months of the year.

Defendant Bennett confiscated all of the tools listed above once COVID-19 shut things down claiming that all of the sudden these items were now a safety and security risk even though they never have been in over two decades. Not even once. Defendant Taylor now is telling petitioner and her like minded peers that "they may never be allowed again to have this cleansing ceremony and that if they are allowed to have the Sweats, then the black tarp is to be clear...This completely erodes the significance of the reason why such a lodge is dark.

3) Even after allowing residents, including petitioner, to purchase and use their own personal pipe once per week, defendants still take advantage of any reason to deny the use thereof.

a) While this may be the first example it is none the less important in showing the overall indifference of petitioner's religious rights and beliefs..

4) On September 9th of 2021 the unit petitioner resides on (Dillon West One) now, then was living on Dillon East one was placed on quarantine, after one of the staff who has worked with this unit was tested for COVID and was found to have COVID, as a result Defendant Bennett again shut down the religious call out for every one and the entire concept for smudging with no pipe was again denied to us

this was on September 11th and 12th of 2021. When the petitioner and other members attempted to question Defendant Bennett she refused to speak with anyone about the possibility of having a make up

day for what we had lost.

a) There is no more or less separation between resident's for and during Smudge, than if the use of the pipe would have been allowed. The only differences would be that there would be , each member does+ own their own pipes.. Thus the denial of any accommodation by request of petitioner of just allotting 30 minutes (as Haleigh Turner had done under other circumstances) when staff as well as the Chaplin (Jeff Brown) were willing to come in and help, was done with complete and utter contempt of and indifference to petitioner's rights, beliefs, and spiritual well being.

5) Defendants Jack Brown, Haleigh Turner, and Leisa Dipman simply cite that SPTP policy allows call-outs to be canceled for a plethora of reasons to include safety, security and operational needs of the facility. However...All of the Defendants have continued to refuse to explain how any accommodation request by petitioner and his peers over the last18months would be or actually pose a threat to the safety, security, and operational needs of the facility.

a) Each of the defendants refuse to even consider the **Less Restrictive Measures** when conflicts do arise, instead the only action taken against the call outs is to always cancel them for their convenience Example: On August 28th and 29th of 2021 Defendant Bennett canceled call-out activities in favor of conducting visits because there were not enough staff that weekend to do

both. Petitioner asked defendant Bennett to schedule a day later that week to make up for the missed day of prayer and worship. Defendant Bennett's definitive answer was "NO". We do ask these courts why not? And the answer is plain: SPTP officials relish any excuse or reason no matter how trivial to cancel religious worship and acts. The SPTP policy even eludes to the fact **that religion can be canceled for any reason by any number of people.**

**Therefore**, Petitioner prays that this court finds the defendants actions do in fact violate petitioner's religious freedom and rights guaranteed to him by the United States Constitution and the Kansas Bill of Rights Section 10 , mandated right to practice petitioners freedom to worship and pray and that his peer's are affected as well and are asking these honorable courts to hold the defendants responsible for their action's as acting under the color of State Law, a showing of prejudicial indifference concerning the right to practice in and worship of prayer. The Statutory rights of petitioner and his peer' rights pursuant to **KSA 59-29a22(b)(8)** and the **1st and 14th Amendment of the United State Constitution The rights to worship and pray and under the 14th Amendment The right to Due Process when a conflict has arisen. Such actions may be acceptable in prison and a penal setting, but the indifference to these rights are not and can not be found to be acceptable in a civil commitment setting for which the Petitioner and his Peer's that are civilly confined see (Hendricks, Crane,Woe, and Bell v wolfish)**

**Therefore** , petitioner also prays that in so finding that this court to order the following relief and order that any further violations based on this courts decision in this case **shall result in a finding,** of being in contempt of court and warning that the court can and will impose all appropriate punitive remedies against any defendant found to violate this court lawful order. The Petitioner asks of this because the defendants have far too long continue to violate all parties, protected right to the freedom of practice our religion and to worship and prayer.

**CLAIM III: LOSS OR DESTRUCTION OF PERSONAL PROPERTY ON NOVEMBER 21st.** Petitioner incorporates by reference and realleges each of the preceding paragraphs in this Complaint and every allegation contained above, as though fully set forth herein. The Defendants assumed possession and control over Petitioner's personal property when he was removed from Issac Ray South 2 and transferred to Jung South on November 1st. Petitioner's property remained on South 2 for three (3) week before it was finally transferred to East One of Dillon Bldg. on November 21st, 2018 and given to the unit staff without an inventory or shakedown sheets. When Petitioner's property was returned to him, he was missing several items. He never received any inventory or shakedown sheets and he never received a post deprivation hearing. Petitioner was denied due process when Defendants failed to return property belonging to him on November 21, 2014. Defendant's were negligent in there duty to protect and

preserve Petitioner's property and improperly denied Petitioner's property claim based on the fact that his brother purchased the missing property. The Defendant's repeated willful exercise of control over his personal property without providing an inventory or due process hearing for withheld property violated his right to due process.

**Therefore**, Petitioner prays that this court finds the defendants actions do in fact violate

petitioner's religious freedom and rights guaranteed to him by the United States Constitution and

the Kansas Bill of Rights Section 10 , mandated right to practice petitioners freedom to worship

and pray and that his peer's are affected as well and are asking these honorable courts to hold the

defendants responsible for their action's as acting under the color of State Law, a showing of

prejudicial indifference concerning the right to practice in and worship of prayer. The Statutory

rights of petitioner and his peer' rights pursuant to **KSA 59-29a22(b)(8)** and the **1st and 14th**

**Amendment of the United State Constitution The rights to worship and pray and under the**

**14th Amendment The right to Due Process when a conflict has arisen. Such actions may be**

**acceptable in prison and a penal setting, but the indifference to these rights are not and can**

**not be found to be acceptable in a civil commitment setting for which the Petitioner and his**

**Peer's that are civilly confined see (Hendricks, Crane, Woe, and Bell v wolfish)**

**Therefore** , petitioner also prays that in so finding that this court to order the following relief and

order that any further violations based on this courts decision in this case **shall result in a**

**finding,** of being in contempt of court and warning that the court can and will impose all

appropriate punitive remedies against any defendant found to violate this court lawful order. The

Petitioner asks of this because the defendants have far too long continue to violate all parties,

protected right to the freedom of practice our religion and to worship and prayer.

**VERIFICATION**

I, David Thayer, have read the above Kansas Department of Aging and Disability Services Tort Complaint and know the contents thereof. The Complaint is true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and Accepted:


Dated:

David Thayer