IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID W. THAYER,

       **Plaintiff,**

       v.                              CASE NO. 24-3043-JWL

LAURA HOWARD,  et al.,

       **Defendants.**

**<u>MEMORANDUM AND ORDER TO SHOW CAUSE</u>**

Plaintiff David W. Thayer is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

## 1.  Nature of the Matter before the Court

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff resides in the inpatient housing at the Larned State Hospital in Larned, Kansas ("LSH") in the Kansas Sexual Predator Treatment Program ("SPTP").  The Court granted Plaintiff's motion for leave to proceed in forma pauperis, and therefore his request (Doc. 7) for an extension of time to comply with the Court's Order to Show Cause at Doc. 3 is denied as moot.

Plaintiff alleges violations of his right to practice his religion in violation of the First Amendment, Kan. Stat. Ann. 59-29a22(b)(8), and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  (Doc. 1, at 9.)  Plaintiff alleges that Defendants have been deliberately indifferent to his religious rights, beliefs, and practices.  *Id.*  Plaintiff alleges that he practices the ways of the Native American beliefs, and that the use of the sacred pipe (Chanupa) and tobacco are a very fundamental and essential aspect of his religion and belief system.  *Id.* at 19.

Plaintiff states that in March of 2020[1], an unpublished memo was implemented that suspended call-out activities and religious meals due to COVID-19. *Id*. at 10, 18. Plaintiff alleges that the memo was not made available to SPTP residents until April 1, 2020, and since that date multiple memos have been posted that ease the restrictions. *Id*. at 10. Plaintiff claims that "each time until late 2021, the right to pray according to my religious beliefs dictate [sic] through use of a pipe and tobacco was continually denied." *Id*.

Plaintiff alleges that saying his prayers includes smudging with the use of a pipe and tobacco. *Id*. at 10–11. Plaintiff alleges that Defendants made no effort to accommodate this religious tenet until after he filed "this complaint later in 2020." *Id*.at 10. Plaintiff alleges that "for over a year each employee . . . refused to allow plaintiff to pray" with the Chanupa (pipe). *Id*. at 12. Plaintiff alleges that Defendants allowed "liquid smudge" (a liquid from a spray bottle "sage in a spray bottle"), but Plaintiff argues that this was not sufficient. *Id*. Plaintiff alleges that although smudging with a pipe was allowed to resume per a memo in January 2021, it wasn't actually allowed until sometime in July 2021. *Id*. at 12–13, 20–21. Plaintiff argues that there was no smudging with the use of a pipe between January 2021 and July of 2021, because therapy staff could not get the lighter from LSH security and despite Plaintiff's grievances he was told they were "working on it" during this time. *Id*.

Plaintiff also points to instances in 2021 when call outs were cancelled due to a shortage of staff. *See id*. at 35, 40 (noting cancellations on August 28th and 29th of 2021, where call outs were cancelled in favor of conducting visits where staff shortages did not allow for both); 29 (noting the denial of an exception when Plaintiff's uncle passed away in May 2020, during COVID); 40 (noting the cancellation of call outs on September 11 and 12, 2021, due to quarantine

---

[1] Plaintiff states elsewhere in the Complaint that the notice cancelling religious activities due to COVID-19 was posted on March 18, 2020. *See* Doc. 1, at 11, 19.

after a staff member tested positive for COVID).  Plaintiff also alleges that during COVID, tools used for sweat ceremonies were taken away and they were told if they were allowed to have sweats, then the black tarp would need to now be clear.  *Id*. at 39.

Plaintiff alleges that the SPTP "does not focus on the individuality of a person, yet the Defendants have taken upon themselves to combine all individuals like 'pigs in a blanket' showing that no person could be responsible for their own actions and behaviors, and this institution believes in a 'one size fits all' concept."  *Id*. at 25.

Plaintiff also alleges that when he was being transferred to a different area of the facility in November 2018[2], Defendants "assumed possession and control" over his property for three weeks until it was finally returned to him.  *Id*. at 41. Plaintiff alleges that when it was returned, several items were missing and he never received an inventory/shakedown sheet or a post deprivation hearing.  *Id*.

Plaintiff names as defendants:  Laura Howard, Secretary of the Kansas Department for Aging and Disability Services; Lindsey Dinkel, LSH Superintendent; Christine Mohr, LSH Director of Psychology; Courtney Wagner, LSH SPTP Program Manager; Haleigh Turner, LSH Chief of Operations; Alexandra Clark, Infectious Disease Control, Kansas Department of Health and Environment Services; Chris Moore, LSH SPTP Due Process Coordinator; Jason Fisher, LSH Chief of Security; Linda Kidd; LSH SPTP Program Leader; Gabriel Rop, LSH SPTP Administrative Program Director; Joni Bishop, LSH SPTP Unit Leader; Tina Rose, LSH SPTP Property Officer; Jeff Brown, LSH SPTP Chaplain; and Tonya Taylor, Former LSH SPTP Acting Program Director.  Plaintiff seeks $7,150 in damages, $50,000 in punitive damages, and declaratory relief.  (Doc. 1, at 5.)

---

[2] Plaintiff refers to November 21, 2018, but later in the paragraph alleges that Defendants failed to return property belonging to him on November 21, 2014.

## II. Statutory Screening of Prisoner Complaints

Where a plaintiff proceeds in forma pauperis, the  Court is required to "dismiss the case at any time if the court determines that . . . (B) the action or appeal—(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face."  *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a

complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### Statute of Limitations

The statute of limitations applicable to § 1983 actions is determined from looking at the appropriate state statute of limitations and tolling principles. *See Hardin v. Straub*, 490 U.S. 536, 539 (1989). "The forum state's statute of limitations for personal injury actions governs civil rights

claims under both 42 U.S.C. § 1981 and § 1983. . . . In Kansas, that is the two-year statute of limitations in Kan. Stat. Ann. § 60–513(a)." *Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch.*, 465 F.3d 1184, 1188 (10th Cir. 2006) (citations omitted).  The same two-year statute of limitations governs actions under 42 U.S.C. § 1985.  *See Alexander v. Oklahoma*, 382 F.3d 1206, 1212 (10th Cir.), *rehearing denied*, 391 F.3d 1155 (10th Cir. 2004), *cert. denied*, 544 U.S. 1044 (2005).

While state law governs the length of the limitations period and tolling issues, "the accrual date of a § 1983 cause of action is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  Under federal law, the claim accrues "when the plaintiff has a complete and present cause of action." *Id.* (internal quotation marks and citation omitted).  In other words, "[a] § 1983 action accrues when facts that would support a cause of action are or should be apparent." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (internal quotation marks and citation omitted), *cert. denied* 549 U.S. 1059 (2006).  A district court may dismiss a complaint filed by an indigent plaintiff if it is patently clear from the allegations as tendered that the action is barred by the statute of limitations.  *Id.* at 1258–59; *see also Jones v. Bock*, 549 U.S. 199, 214 (2007); *Hawkins v. Lemons*, No. 09-3116-SAC, 2009 WL 2475130, at *2 (D. Kan. Aug. 12, 2009).

It plainly appears from the face of the Complaint that Plaintiff's claims are subject to dismissal as barred by the applicable two-year statute of limitations.  Plaintiff filed his Complaint on March 25, 2024.  Plaintiff's claims are based on incidents occurring in 2018, 2020 and 2021.  It thus appears that any events or acts of Defendants taken in connection with Plaintiff's claims took place more than two years prior to the filing of Plaintiff's Complaint and are time-barred.  *See Fratus v. Deland*, 49 F.3d 673, 674-75 (10th Cir. 1995) (district court may consider affirmative defenses *sua sponte* when the defense is obvious from the face of the complaint and no further factual record is required to be developed).  Plaintiff has not alleged facts suggesting that he would

be entitled to statutory or equitable tolling.  Plaintiff should show good cause why his claims should not be dismissed as barred by the statute of limitations.

### 2.  Prior Action

Plaintiff has raised the same claims in a case previously pending in this Court.  In *Thayer v. Howard*, Case No. 22-3086-DDC, the Court entered a Memorandum and Order on April 8, 2024, disposing of all claims in the case.  The Court held that:

> Larned State Hospital (LSH) is a psychiatric hospital run by the state of Kansas. Doc. 49-1 at 2 (Dipman Decl. ¶¶ 6–7). It has distinct treatment programs, including the Sexual Predator Treatment Program (SPTP)—an in patient program for convicted sex offenders who have completed their prison sentences but nonetheless the courts have determined are violent sexual offenders in need of involuntary inpatient treatment. *Id.* (Dipman Decl. ¶ 10); Doc. 49-2 at 2 (Rop Decl. ¶ 6). Plaintiff has resided in the inpatient housing at LSH in the SPTP since 2003. Doc. 49-1 at 3 (Dipman Decl. ¶ 13); Doc. 49-2 at 3 (Rop Decl. ¶ 11).
>
> LSH accommodates resident religious practices spanning multiple denominations (Asatru, Christian, Druid, Jewish, Muslim, Native American, Rastafarian, Satanist, and Wiccan). Doc. 53 at 2 (Brown Decl. ¶ 7). Plaintiff is a member of the Independent Native American religion. *Id.* at 15 (Brown Decl. ¶ 32). The Native American religious activities at LSH include smudging,[3] pipe-and-drum ceremonies, sweat lodge ceremonies, healing and passing ceremonies, pow-wows, and special meals for holidays. *Id.* at 16–17 (Brown Decl. ¶¶ 39, 45).
>
> In March 2020, LSH created a "Pandemic Preparedness Plan" aimed at avoiding and managing COVID-19 transmission and infection within the hospital. Doc. 49-1 at 3–4 (Dipman Decl. ¶¶ 17–18). LSH modified and updated the plan over time, depending on the COVID-19 infection levels at the hospital, the surrounding county, and the state. *Id.* at 4 (Dipman Decl. ¶ 19). Those restrictions applied to all religious activities and they always permitted residents to conduct individual religious services regardless of the restriction phase. *Id.* at 3–4 (Dipman Decl. ¶ 18). Phase A, the most restrictive plan, suspended all group activities. Doc. 49-4 at 4–5 (Bennett Decl. ¶ 22). Residents still could gather in socially distanced, small groups of ten or less for "fresh air breaks." *Id.* Phase B permitted groups of 15 or fewer to gather for 30 minutes if residents socially distanced and wore masks. *Id.* Phase C permitted groups of 30 or fewer to

---

[3] Smudging is an activity that involves burning sage. Doc. 53 at 18 (Brown Decl. ¶ 48).

gather for an hour, so long as the residents socially distanced and masked. *Id.* To prevent the spread of COVID-19, LSH closed the cafeteria. *Id.* at 9 (Bennett Decl. ¶ 38). It remains closed and residents still eat in their rooms or in a commons area in their living unit. *Id.*

These restrictions, among other LSH and SPTP policies at the time, affected residents who practiced Native American religions. For example, plaintiff and other adherents to Native American religion couldn't perform sweat lodge or pipe ceremonies under Phases A, B, or C because those ceremonies couldn't accommodate social distance and masking. *Id.* at 4–5 (Bennett Decl. ¶ 22). And even once the COVID-19 phases ended, residents who practiced Native American religions briefly lacked access to a sweat lodge to perform the ceremony for a variety of reasons. *Id.* at 12 (Bennett Decl. ¶ 58). SPTP adopted a policy that allowed Native American religious residents to purchase and use "liquid smudge"— a smokeless smudge spray—instead of their normal smudging practice. Doc. 53 at 18 (Brown Decl. ¶¶ 46–47). And LSH adopted a policy forbidding shared prayer pipes to reduce the risk of communicable diseases. Instead, each resident could purchase their own individual pipe. *Id.* at 20 (Brown Decl. ¶ 57).

LSH ended its COVID-19 phase plan in June 2023. Doc. 49-1 at 4 (Dipman Decl. ¶ 20). Currently, residents adhering to Native American religions may smudge daily, conduct pipe and drum ceremonies weekly, conduct sweat lodge ceremonies monthly, participate periodically in special meals for holidays, and conduct healing and passing ceremonies. Doc. 53 at 16 (Brown Decl. ¶ 39). Native American religious residents can replace monthly sweat lodge ceremonies with pow-wows. *Id.* at 17 (Brown Decl. ¶ 45).

Non-pandemic disturbances sometimes interrupt regularly scheduled religious activities at LSH. During county burn bans, LSH would limit smudging, pipe ceremonies, or sweat lodge ceremonies because these activities increased the risk of wildfire. Doc. 49-4 at 14–16 (Bennett Decl. ¶¶ 65–72). LSH also limited religious activities when it lacked sufficient staff to supervise residents. Doc. 49-5 at 4 (Kidd Decl. ¶ 24). These limitations affected sweat lodge ceremonies—where residents use rakes or modified pitchforks to move hot stones from an open fire into the lodge—because the ceremonies require increased staffing levels and trained staff. *Id.* at 4 (Kidd Decl. ¶ 21); Doc. 53 at 23 (Brown Decl. ¶ 80). It also affected frequent requests for healing and passing ceremonies. Doc. 49-2 at 8 (Bennett Decl. ¶ 40).

In April 2022, plaintiff sued defendants Laura Howard (Kansas Department for Aging and Disability Services Secretary),[4] Lesia Dipman (LSH Superintendent), Jeff Brown (LSH Chaplain), Haleigh Bennett (LSH Chief Operations Officer), and Linda Kidd (SPTP Program Leader), for restrictions to plaintiff's religious exercise. Doc. 1 (Compl.); Doc. 45 (Pretrial Order). He contends that LSH has restricted and continues to restrict smudging, sweat lodge ceremonies, communal meals, pipe and drum ceremonies, and healing and passing ceremonies. Doc. 45 at 3 (Pretrial Order ¶ 3.a.ii.). Plaintiff requests injunctive relief mandating eight hours of sweat lodge time and double portions of traditional meals. *Id.* at 9 (Pretrial Order ¶ 5). He also seeks compensatory and punitive monetary damages from defendants' "representative agency"— *i.e.*, awards against defendants in their official capacities. *Id.* Plaintiff brings claims under: (1) § 1983 for violating his First Amendment and Fourteenth Amendment rights; (2) the Religious Land Use and Institutionalized Persons Act (RLUIPA); (3) the Kansas Constitution Bill of Rights;[5] and (4) Kan. Stat. Ann. § 59-29a22(b)(8).[6] *Id.* at 7 (Pretrial Order at ¶ 4.a.). Defendants object and filed a Motion for Summary Judgment (Doc. 48). Plaintiff hasn't responded to this motion.

*Thayer v. Howard*, Case No. 22-3086-DDC, Doc. 58, at 2–5 (D. Kan. April 8, 2024).

In dismissing all of Plaintiff's claims, the Court found that:  Plaintiff can't sue defendants in their individual capacity for injunctive or declaratory relief; plaintiff's claims for monetary damages against defendants in their official capacities are barred by the Eleventh Amendment; plaintiff failed to explain how the Fourteenth Amendment would apply to his claims; regarding plaintiffs request for injunctive relief on his Frist Amendment claims, plaintiff failed to identify evidence presenting a triable claim regarding the sweat lodge aspect of his § 1983 claim; plaintiff presented no evidence demonstrating that providing him with regular sized meals burdens his right

---

[4] The Kansas Department for Aging and Disability Services Secretary supervises LSH and has custody over individuals in the Sexual Predator Treatment Program. Kan. Stat. Ann. §§ 59-29a01, 59-29a22(a)(1)(B); Doc. 49-1 at 2 (Dipman Decl. ¶ 6).

[5] Plaintiff asserts that defendants' actions violate his "religious freedom and rights guaranteed to him by . . . the Kansas Bill of Rights Section 10[.]" Doc. 45 at 7 (Pretrial Order ¶ 4.a.i.). But section 10 of the Kansas Constitution Bill of Rights references criminal prosecution protections—not religious rights. Kan. Const. Bill of Rts. § 10.

[6] Kan. Stat. Ann. § 59-29a22(b)(8) entitles each person in SPTP custody to "individual religious worship within the facility if the person desires such an opportunity, as long as it complies with applicable laws and facility rules and policies."

to exercise his religion; no reasonable factfinder could find that defendants have substantially burdened plaintiff's religious freedom by restricting smudging; plaintiff has adduced no evidence showing that any restrictions affecting the pipe and drum ceremonies substantially burdened his ability to adhere to his Native American religion; no reasonable juror could find or infer that defendants substantially burdened plaintiff's ability to practice his religion through the pipe and drum ceremony allowances; plaintiff has come forward with no specific facts capable of supporting a finding that the current healing and passing ceremonies substantially burden his right to adhere to or exercise his Native American religion; and no reasonable juror could find or infer that defendants substantially burdened plaintiff's ability to practice his religion by limiting healing and passing ceremonies. *Id*. at 8–19.

The Court also considered Plaintiff's RLUIPA claim, finding that Plaintiff's request for money damages on his official capacity claims under RLUIPA were blocked by sovereign immunity,  and noting that there are no individual-capacity claims under RLUIPA.  As to Plaintiff's request for injunctive relief, the Court found that the same analysis used for Plaintiff's First Amendment claims applied, and the Court already found that no reasonable factfinder could conclude that defendants substantially burdened Plaintiff's ability to practice his religion.  *Id*. at 20–21.

Because the Court dismissed all of Plaintiff's federal claims, the Court declined to exercise supplemental jurisdiction over Plaintiff's state law claim. *Id*. at 22.  Plaintiff sued defendants for violating Section 10 of the Kansas Constitution Bill of Rights and Kan. Stat. Ann. § 59-29a22(b)(8).

"Collateral estoppel, or issue preclusion, is available in actions under § 1983." *Williams v. Henderson*, 626 F. App'x 761, 763 (10th Cir. 2015) (unpublished) (citing *Allen v. McCurry*, 449

U.S. 90 (1980)).  "The doctrine applies when (1) the issue previously decided is identical with the one presented in the current action; (2) the prior action was finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior litigation, and (4) the party against whom the doctrine is invoked had a full and fair opportunity to litigate the issue in the prior action."  *Id.* (citing *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009)).

Even if Plaintiff's claims were not barred by the statute of limitations, they may be subject to collateral estoppel based on his prior case.  In addition, "[r]epetitious litigation of virtually identical causes of action may be dismissed under § 1915 as frivolous or malicious." *Winkle v. Hammond*, 601 F. App'x 754, 754–55 (10th Cir. 2015) (quoting *McWilliams v. State of Colo.,* 121 F.3d 573, 574 (10th Cir. 1997) (internal quotation marks and brackets omitted)); *see also Davis v. Bacon*, 234 F. App'x 872, 874 (10th Cir. 2007) (dismissing as frivolous a complaint that "substantially mirrors" a prior complaint that was dismissed).

### 3.  No Constitutional Violation

Plaintiff alleges the violation of an LSH-SPTP policy.  The violation of a prison regulation does not state a constitutional violation unless the prison official's conduct "failed to conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation).  In addition, to the extent Plaintiff takes issue with the "one size fits all" approach used in the SPTP program, he fails to allege how this rises to the level of a constitutional violation.

Plaintiff also alleges—as he did in his prior case—a violation of Kan. Stat. Ann. § 59-29a22(b)(8).  It is well-settled that state law violations are not grounds for relief under § 1983.

"[A] violation of state law alone does not give rise to a federal cause of action under § 1983." *Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994) (citation omitted). This Court is not obliged to exercise supplemental jurisdiction over any state law claims, even if valid, given that Plaintiff has failed to allege a federal claim. *See* 28 U.S.C. § 1367(c)(3).   This Court agrees with the reasoning set forth by the Court in Plaintiff's prior case:

> Under 28 U.S.C. § 1367(c)(3), the court may decline to exercise supplemental jurisdiction over state law claims if it has "dismissed all claims over which it has original  jurisdiction[.]" Section 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). In "the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7. Also, notions "of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).
> Our Circuit has expressed its preference that, when a district court dismisses all federal claims, it typically should decline to exercise supplemental jurisdiction over state law claims. *See Smith v. City of Enid ex rel. City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all  federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."). But still, the decision is committed to the district court's sound discretion. *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138–39 (10th Cir. 2004).
> With this precedent in mind, the court, in its discretion, declines to exercise supplemental jurisdiction over plaintiff's state law claims. The court finds no compelling reasons to depart from our Circuit's general directives. Fairness and comity generally provide that a state court should resolve plaintiff's state law claim. So it is here.

*Thayer v. Howard*, Case No. 22-3086-DDC, Doc. 58, at 22–23 (D. Kan. April 8, 2024).

**4. References to Additional Plaintiffs/Class Members**

Although Plaintiff is the only named Plaintiff in the caption of the Complaint, the Court notes that at various places in his Complaint he refers to "Plaintiffs" and "class members," and states that he is bringing this action for all SPTP residents "who believe in and practice the Native path who are members of the Grey Wolf and Red Wolf Call outs." *See, e.g.,* Doc. 1, at 34–35.  No other plaintiffs have signed the Complaint as required by the Court's local rules and the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed  . . . by a party personally if the party is unrepresented."); D. Kan. Rule 9.1(a)(3) ("The following filings must be in writing, signed, and verified (meaning sworn under penalty of perjury) . . . civil rights complaints by prisoners . . ..").

It is well-settled that a § 1983 claim must be based on the violation of plaintiff's personal rights and not the rights of someone else.  *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (citations omitted).  To the extent Plaintiff attempts to raise claims on behalf of others, a review of the allegations contained in his Complaint indicates he lacks standing to do so.  To have standing, a prisoner must state "specific facts connecting the allegedly unconstitutional conditions with his own experiences [in the prison], or indicat[e] how the conditions caused him injury." *Swoboda v. Dubach,* 992 F.2d 286, 289 (10th Cir. 1993).  "[G]eneral observations" about prison conditions are not actionable under 42 U.S.C. § 1983.  *Id.* at 289–90.

Plaintiff references "class members" and suggests he is bringing this action in his own name, as well as on behalf of other SPTP residents.  This case has not been certified as a class action, and it cannot proceed as a class action with any pro se plaintiff as class representative.  "A court may not certify a class unless it determines 'the representative parties will fairly and adequately protect the interests of the class." *Lewis v. Clark*, 577 F. App'x 786, 793 (10th Cir.

2014) (citing Fed. R. Civ. P. 23(a)(4)).  "When the court reviews the quality of the representation under Rule 23(a)(4), it will inquire not only into the character and quality of the named representative party, but also it will consider the quality and experience of the attorneys for the class." *Id*. (citation omitted).  The Tenth Circuit in *Fymbo v. State Farm Fire and Casualty Co.*, 213 F.3d 1320 (10th Cir. 2000), concluded that a "litigant may bring his own claims to federal court without counsel, but not the claims of others" because "the competence of a layman is 'clearly too limited to allow him to risk the rights of others.'"  *Id*. at 1321(citation omitted).  Thus, a pro se plaintiff cannot adequately represent a class.

## IV.  Response Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein.  Failure to respond by the deadline may result in dismissal of this action without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED THAT** Plaintiff's request (Doc. 7) for an extension of time to comply with the Court's Order to Show Cause at Doc. 3 is **denied as moot**.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **May 24, 2024,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated April 26, 2024, in Kansas City, Kansas.**

S/  John W. Lungstrum
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**